**BEN TRAVIS LAW, APC**
Ben Travis
*ben@bentravislaw.com*
4660 La Jolla Village Drive, Suite 100
San Diego, California 92122
Phone: (619) 353-7966

**REESE LLP**
Michael R. Reese
*mreese@reesellp.com*
Sue J. Nam
*snam@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile:  (212) 253-4272

**REESE LLP**
Charles D. Moore
*cmoore@reesellp.com*
121 N. Washington Ave., 4th Floor
Minneapolis, Minnesota 55401
Telephone: (212) 643-0500
Facsimile:  (212) 253-4272

*Counsel for Plaintiff and the Proposed Class*

United States District Court
Eastern District of New York

| | |
|---|---|
| ANDREW KOMKARAN, individually and on behalf of all others similarly situated<br><br>       Plaintiff<br><br>   - against -<br><br>RUST-OLEUM CORPORATION,<br><br>       Defendant | Case No.  1:24-cv-00612<br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff ANDREW KOMKARAN ("Plaintiff"), by his undersigned attorneys alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

## INTRODUCTION

1.     This is a proposed class action brought on behalf of New York consumers of Defendant RUST-OLEUM CORPORATION's ("Rust-Oleum" or "Defendant") Watco Tung Oil products (collectively the "Products" or individually the "Product").

2.     Defendant's marketing, labeling, and sale of the Products mislead reasonable consumers to believe that the Products consist primarily, if not entirely, of Tung Oil by stating "Tung Oil" on the front label without actually disclosing that Tung Oil is not even the primary ingredient ("Tung Oil Representation").

3.     Consumers interpret the Tung Oil Representation to mean that the Products primarily consist of Tung Oil. Unfortunately for consumers, the Tung Oil Representation is false and misleading because the Products have only a small percentage of Tung Oil.

4.     By labeling the Products with the Tung Oil Representation, Defendant creates consumer deception and confusion. A reasonable consumer purchases the Products believing that they are primarily Tung Oil. However, a reasonable consumer would not deem the Products to be primarily Tung Oil if they knew the Products only contained small amounts of Tung Oil.

5.     Defendant's misrepresentations about the Products were uniform and were communicated to Plaintiff, and every other member of the Class, at every point of purchase and consumption throughout the Class Period.

6.     Plaintiff now brings this action to stop Defendant's misrepresentation and recover the monies he paid for the Products as a result of the misrepresentation, as well as statutory

1

damages and the other relief detailed below.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) ("CAFA"). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, there is diversity of citizenship between at minimum Plaintiff and Defendant and there are over 100 class members.

8.      This court has personal jurisdiction over Defendant because it conducts and transacts business within New York and contracts to supply and supplies goods within New York.

9.      Venue is proper because Plaintiff and many class members reside in this District and Defendant does business in this District. Additionally, a substantial part of the events and omissions giving rise to the claims occurred in this District.

## PARTIES

10.     Plaintiff Komkaran is a resident of Woodhaven, Queens, New York. Plaintiff purchased Defendant's Products while in Queens, New York during the Class Period. Prior to purchase, he saw the Product's labeling with the Tung Oil Representation. Plaintiff brings the claims below seeking damages, actual and statutory.

11.     Defendant Rust-Oleum is a Delaware corporation with a principal place of business in Vernon Hills, Illinois.

12.     On information and belief, in committing the wrongful acts alleged herein, Defendant, in connection with its subsidiaries, affiliates, and/or other related entities and their employees, planned, participated in and furthered a common scheme to induce members of the public to purchase the Products by means of false, misleading, deceptive and fraudulent representations, and Defendant participated in the making of such representations in that it disseminated those misrepresentations or caused them to be disseminated.

2

## SUBSTANTIVE ALLEGATIONS

### A.     BACKGROUND OF TUNG OIL

13.    Tung Oil is an oil that is extracted from the seed of the Tung tree, which is native to China.

14.    Tung Oil has been used for centuries as a water-resistant finish on wooden surfaces.

15.    Tung Oil is also used on other types of surfaces such as bamboo, concrete, stone, brick, and even metal surfaces.

16.    Consumers who engage in woodworking or who are otherwise working on a project that requires a finish, look to purchase Tung Oil, as it is a great option for such uses.

17.    Consumers seek out pure Tung Oil as it is free of additives and distillates.

18.    Manufacturers and marketers know that consumers rely on the accuracy of the claims on their labels in making their purchasing decisions. In fact, consumers are willing to pay premium prices for pure Tung Oil.

19.    Consumers often pay a price premium for what they perceive to be authentic products, particularly those perceived to be pure, in the case of Defendant's Products.

20.    In the present instance, consumers expect Defendant's products to be 100% Tung Oil or, at minimum, primarily Tung Oil.

### B.     DEFENDANT'S MISREPRESENTATIONS

21.    Defendant manufactures, labels, distributes, and sells Tung Oil products throughout the United States, including in New York.

22.    Defendant seeks to capitalize on the consumer market for Tung Oil by selling its Tung Oil product.

23.    Defendant's marketing and advertising of the Products gives consumers the impression that the Products primarily consist of Tung Oil.

3

24.     An example of the front label is below:



25.     Consumers expect the Products to consist of 100% Tung Oil or, at minimum, primarily Tung Oil. However, Defendant misleads consumers by representing that its Products are Tung Oil without disclosing that there is only a small percentage of Tung Oil in the Products.

26.     Consumers have no way of knowing, when purchasing the Products, that they are being deceived and the Products only contain a small amount of Tung Oil.

27.     Despite Defendant's labeling of the Products with the Tung Oil Representation, the

Products contain only small amounts of Tung Oil. Specifically, Tung Oil is less than 20% of the total weight of the Products as evidenced by Section 8 of the Safety Data Sheet, attached as Exhibit A.

28.    By contrast, Stoddard solvent makes up approximately 30% of the Product, while some unknown ingredient—presumably water—makes up approximately 44% of the Product. *Id.*

29.    Defendant's labeling of the Products with the Tung Oil Representation demonstrates its intent to persuade consumers that the Products are primarily, if not entirely, Tung Oil. However, as described above, the Products contain only small amounts of Tung Oil.

30.    Hence, Defendant's representations that the Products are primarily Tung Oil are false and misleading.

31.    Reasonable consumers, including Plaintiff, purchased the Products based upon their belief that the Products were primarily Tung Oil. However, a reasonable consumer would not deem the Products to be primarily Tung Oil if they knew the Products contained only a small amount of Tung Oil.

32.    Defendant's misrepresentations cause confusion among consumers, who believe they are purchasing products that are primarily Tung Oil, when, in fact, they are purchasing products that contain a small percentage of Tung Oil.

33.    Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class members.

### C.    ECONOMIC INJURY

34.    Defendant knows that consumers are willing to pay more for pure Tung Oil products due to their perception that such products are of better quality and believe they are paying costs associated with the larger percentage of Tung Oil in the products.

35.    Plaintiff saw Defendant's Products on the shelf, saw the Tung Oil Representation, and believed the Products contained entirely, or at least primarily, Tung Oil.

36.    Plaintiff and the Class Members expected Defendant's Products would have been primarily Tung Oil based on the Tung Oil Representation.

37.    Plaintiff and the Class Members did not expect the Products to only contain small amounts of Tung Oil.

38.    Plaintiff and the Class Members saw the packaging, which misleadingly asserted that the products were primarily Tung Oil when they were not.

39.    Plaintiff would not have purchased the Products if he knew the representations were false and misleading.

40.    Plaintiff paid more for the Products than he otherwise would have, and would only have been willing to pay less, or unwilling to purchase it at all, absent the misleading representations.

41.    As a result of the false and misleading labeling, the Products are sold at a price that is higher than the price the Products would have been if they were represented in a non-misleading way.

42.    By way of example, a package of Watco Tung Oil (32 oz or 1 quart) sells for $28.28.[1] But a package of OAIEGSD Pure Tung Oil (32 oz or 1 quart) sells for $18.98.[2] Equally, a 32 oz or 1 quart package of Rockler 100% Pure Tung Oil sells for $10.50.[3]

43.    Plaintiff was also deprived of the benefit of the bargain because the Products he

---

[1] https://www.homedepot.com/p/Watco-1-Quart-Clear-Liquid-Interior-Tung-Oil-Finish-266634/203369941 (last visited January 23, 2024).
[2] https://www.amazon.com/OAIEGSD-Waterproof-Finishing-Penetration-Furniture/dp/B0BLCFC41S/ (last visited January 23, 2024).
[3] https://www.rockler.com/rockler-s-tung-oil (last visited January 23, 2024).

purchased were different than what Defendant warranted.

44.   As a result of these unfair and deceptive practices, Defendant has likely collected millions of dollars from the sale of its Products that it would not have otherwise earned. Plaintiff and Class members paid money for Tung Oil products that are not what they purport to be or what they bargained for. They paid a premium for such Products when they could have instead bought other, less expensive products.

45.   In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay for, and/or pay a premium for, Products labeled with the Tung Oil Representation. As a result, Plaintiff and the Class members were injured in that they:

      a.      Paid a sum of money for the Products, which were not what Defendant represented;

      b.      Paid a premium price for the Products, which were not what Defendant represented;

      c.      Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented; and

      d.      Were of a different quality than what Defendant promised.

46.   Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class members would not have been willing to pay the same amount for the Products they purchased, and/or Plaintiff and the Class members would not have been willing to purchase the Products at all.

47.   Plaintiff and the Class members paid for Products that were represented as being primarily Tung Oil but received Products that contained only small amounts of Tung Oil. The

Products Plaintiff and the Class members received were worth less than the Products for which they paid.

48.     Based on Defendant's misleading and deceptive representations, Defendant was able to, and did, charge a premium price for the Products over the cost of competitive products not bearing misleading labels.

49.     Plaintiff and the Class members all paid money for the Products. However, Plaintiff and the Class members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions. Plaintiff and the Class members purchased and/or paid more for the Products than they would have had they known the truth about the Products. Consequently, Plaintiff and the Class members have suffered an injury in fact, and lost money as a result of Defendant's wrongful conduct.

## CLASS ALLEGATIONS

50.     Plaintiff brings this action as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

51.     The class is defined as all consumers who purchased at least one of the Products in New York at any time during the period of January 26, 2021, to the date of class certification ("Class").

52.     Excluded from the Class are Defendant's current or former officers, directors, and employees; counsel for Plaintiff and Defendant; and the judicial officer to whom this lawsuit is assigned.

53.     Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise. Plaintiff also reserves the right to create subclasses.

54.     The requirements of Federal Rule of Civil Procedure 23 are satisfied because:

a.      Numerosity: The members of the class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is presently unknown to Plaintiff, based on the ubiquity of the Products, Plaintiff estimates that the Class numbers are in the thousands.

b.      Commonality: There are questions of law and fact that are common to the Class members and that predominate over individual questions. These include the following:

     i.      Whether Defendant misrepresented to the Class members that its Products are primarily Tung Oil;

     ii.     Whether Defendant's misrepresentations and omissions were material to reasonable consumers;

     iii.    Whether Defendant's labeling, marketing, and sale of its Products constitutes false advertising;

     iv.     Whether Defendant's conduct injured consumers and, if so, the extent of the injury; and

     v.      The appropriate remedies for Defendant's conduct.

c.      Typicality: Plaintiff's claims are typical of the claims of the Class members because Plaintiff suffered the same injury as the Class members by nature of their purchases of the Products based on Defendant's misrepresentations that the Products are primarily Tung Oil.

d.  <u>Adequacy</u>: Plaintiff will fairly and adequately represent and protect the interests of the members of the class.  Plaintiff does not have any interests that are adverse to those of the Class members. Plaintiff has retained competent counsel experienced in class action litigation who intend to prosecute this action vigorously and have the financial means of doing so.

e.  <u>Superiority</u>: A class action is superior to other available methods for the efficient adjudication of this controversy. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender.  Since the damages suffered by individual Class members are relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged, while an important public interest will be served by addressing the matter as a class action.

55.  Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 349**
**(On Behalf of Plaintiff and Other Class Members)**

56.  Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

57.  New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the

10

furnishing of any service in this state . . .”

58.    The conduct of Defendant alleged herein constitutes recurring, “unlawful” deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the other Class Members seek monetary damages.

59.    Defendant misleadingly, inaccurately, and deceptively presents its Products to consumers.

60.    Defendant’s improper consumer-oriented conduct is misleading in a material way in that it, *inter alia*, induced Plaintiff and other Class Members to purchase and/or pay a premium for Defendant’s Products and to use the Products when they otherwise would not have.

61.    Defendant made its untrue or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

62.    Plaintiff and other Class Members have been injured inasmuch as they paid a premium for the Products. Accordingly, Plaintiff and other Class Members received less than what they bargained or paid for.

63.    Defendant’s deceptive and misleading practices constitute deceptive acts and practices in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and other members of the Class have been damaged thereby.

64.    As a result of Defendant’s recurring deceptive acts and practices, Plaintiff and other Class Members are entitled to monetary and compensatory damages of all moneys obtained by means of Defendant’s unlawful conduct, interest, and attorneys’ fees and costs. This includes actual damages under GBL § 349, as well as statutory damages of $50 per unit purchased.

**SECOND CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiff and Other Class Members)**

65.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

66.    N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

67.    N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

68.    Defendant's labeling and advertisements contain untrue and materially misleading statements concerning Defendant's Products inasmuch as they misrepresent that the Products are primarily Tung Oil.

69.    Plaintiff and other Class Members have been injured inasmuch as they paid a premium for the Products, which, contrary to Defendant's representations, were false and deceptive. Accordingly, Plaintiff and other Class Members received less than what they bargained or paid for.

70.    Defendant's packaging and product labeling induced Plaintiff and Class Members to buy Defendant's Products.

71.    Defendant made the untrue and misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

72.    Defendant made the material misrepresentations described in this Complaint on Defendant's Products' packaging and labeling.

73.    Defendant's material misrepresentations were substantially uniform in content, presentation, and impact on consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

74.    As a result of Defendant's recurring acts and practices in violation of GBL § 350, Plaintiff and Class Members are entitled to monetary and compensatory damages for all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs as well as statutory damages of $500 per unit purchased.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays for judgment:

1.    Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the Class;

2.    Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

3.    Awarding damages and interest;

4.    Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

5.    Such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a jury trial on all issues.

Dated: January 26, 2024                    Respectfully submitted,

                                           **BEN TRAVIS LAW, APC**
                                           */s/ Ben Travis*
                                           Ben Travis
                                           *ben@bentravislaw.com*
                                           4660 La Jolla Village Drive, Suite 100
                                           San Diego, California 92122
                                           Phone: (619) 353-7966

                                           **REESE LLP**
                                           Michael R. Reese
                                           *mreese@reesellp.com*
                                           Sue J. Nam
                                           *snam@reesellp.com*
                                           100 West 93rd Street, 16th Floor
                                           New York, New York 10025
                                           Phone:  (212) 643-0500

                                           **REESE LLP**
                                           *cmoore@reesellp.com*
                                           Charles D. Moore
                                           121 N. Washington Ave., 4th Floor
                                           Minneapolis, Minnesota 55401
                                           Telephone: (212) 643-0500

14

# EXHIBIT A

<table>
<tr><td>

# Safety Data Sheet

</td><td>



* Trusted Quality Since 1921 *
www.rustoleum.com

</td></tr>
</table>

## 1. Identification

| | | | |
|---|---|---|---|
| **Product Name:** | WATCO QT 4PK TUNG OIL | **Revision Date:** | 4/13/2023 |
| **Product Identifier:** | 266634 | **Supercedes Date:** | 3/15/2023 |
| **Recommended Use:** | Wood Stain/Watco | | |
| **Supplier:** | Rust-Oleum Corporation<br>11 Hawthorn Parkway<br>Vernon Hills, IL  60061<br>USA | **Manufacturer:** | Rust-Oleum Corporation<br>11 Hawthorn Parkway<br>Vernon Hills, IL  60061<br>USA |
| **Preparer:** | Regulatory Department | | |
| **Emergency Telephone:** | 24 Hour Hotline: 847-367-7700 | | |

## 2. Hazards Identification

### Classification

**Symbol(s) of Product**



**Signal Word**
Danger

**Possible Hazards**
49% of the mixture consists of ingredient(s) of unknown acute toxicity.

### GHS HAZARD STATEMENTS

| | | |
|---|---|---|
| Carcinogenicity, category 1B | H350 | May cause cancer. |
| Flammable Liquid, category 3 | H226 | Flammable liquid and vapor. |
| Germ Cell Mutagenicity, category 1B | H340 | May cause genetic defects. |
| Reproductive Toxicity, category 1B | H360 | May damage fertility or the unborn child. |
| STOT, Repeated Exposure, category 1 | H372 | Causes damage to organs through prolonged or repeated exposure. |
| Skin Sensitizer, category 1 | H317 | May cause an allergic skin reaction. |

### GHS LABEL PRECAUTIONARY STATEMENTS

| | |
|---|---|
| P201 | Obtain special instructions before use. |
| P210 | Keep away from heat, hot surfaces, sparks, open flames and other ignition sources. NO SMOKING. |
| P233 | Keep container tightly closed. |
| P260 | Do not breathe dust/fume/gas/mist/vapors/spray. |
| P264 | Wash hands thoroughly after handling. |
| P272 | Contaminated work clothing should not be allowed out of the workplace. |
| P280 | Wear protective gloves/protective clothing/eye protection/face protection. |

| P302+P352 | IF ON SKIN: Wash with plenty of soap and water. |
| P303+P361+P353 | IF ON SKIN (or hair): Take off immediately all contaminated clothing. Rinse skin with water/ shower. |
| P308+P313 | IF exposed or concerned: Get medical advice/attention. |
| P314 | Get medical advice/attention if you feel unwell. |
| P321 | For specific treatment see label. |
| P333+P313 | If skin irritation or rash occurs: Get medical advice/attention. |
| P370+P378 | In case of fire: Use alcohol film forming foam, carbon dioxide, dry chemical, dry sand to extinguish. |
| P403+P235 | Store in a well-ventilated place. Keep cool. |
| P405 | Store locked up. |
| P501 | Dispose of contents/container in accordance with local, regional and national regulations. |

**GHS SDS PRECAUTIONARY STATEMENTS**

| P240 | Ground/bond container and receiving equipment. |
| P241 | Use explosion-proof electrical/ventilating/lighting/equipment. |
| P242 | Use only non-sparking tools. |
| P243 | Take precautionary measures against static discharge. |
| P270 | Do not eat, drink or smoke when using this product. |
| P363 | Wash contaminated clothing before reuse. |

## 3. Composition / Information on Ingredients

**HAZARDOUS SUBSTANCES**

| Chemical Name | CAS-No. | Wt.% Range | GHS Symbols | GHS Statements |
|---|---|---|---|---|
| Stoddard Solvent | 8052-41-3 | 25-50 | GHS08 | H304-372 |
| Tung Oil | 8001-20-5 | 10-25 | Not Available | Not Available |
| Xylenes (o-, m-, p- Isomers) | 1330-20-7 | 0.1-1.0 | GHS02-GHS07 | H226-315-319-332 |
| Methyl Ethyl Ketoxime | 96-29-7 | 0.1-1.0 | GHS05-GHS06-GHS07-GHS08 | H302-312-315-317-318-331-336-350-370-373 |
| Zirconium 2-Ethylhexanoate | 22464-99-9 | 0.1-1.0 | GHS07-GHS08 | H315-320-360 |
| Triethylamine | 121-44-8 | 0.1-1.0 | GHS02-GHS05-GHS06-GHS07 | H225-302-311-314-332-335 |
| Ethylbenzene | 100-41-4 | 0.1-1.0 | GHS02-GHS07-GHS08 | H225-304-332-373 |
| Naphtha, Hydrotreated Heavy | 64742-48-9 | 0.1-1.0 | GHS08 | H304-340-350 |

## 4. First-Aid Measures

**FIRST AID - EYE CONTACT:** Immediately flush eyes with plenty of water for at least 15 minutes holding eyelids open.  Get medical attention.  Do NOT allow rubbing of eyes or keeping eyes closed.

**FIRST AID - SKIN CONTACT:** Wash skin with soap and water. Remove contaminated clothing. Get medical attention if irritation develops or persists.

**FIRST AID - INHALATION:** Remove to fresh air.  If not breathing, give artificial respiration.  If breathing is difficult, give oxygen.  Get immediate medical attention.  Do NOT use mouth-to-mouth resuscitation.  If you experience difficulty in breathing, leave the area to obtain fresh air.  If continued difficulty is experienced, get medical assistance immediately.

**FIRST AID - INGESTION:** If swallowed, get medical attention.

## 5. Fire-Fighting Measures

**EXTINGUISHING MEDIA:**    Alcohol Film Forming Foam, Carbon Dioxide, Dry Chemical, Dry Sand, Water Fog

**UNUSUAL FIRE AND EXPLOSION HAZARDS:** Closed containers may explode when exposed to extreme heat due to buildup of steam.  Keep containers tightly closed.  Combustible liquid and vapor.  No unusual fire or explosion hazards noted.

**SPECIAL FIREFIGHTING PROCEDURES:** Evacuate area and fight fire from a safe distance.  Use water spray to keep fire-exposed containers cool. Containers may explode when heated.

**Special Fire and Explosion Hazard (Combustible Dust):** No Information

## 6. Accidental Release Measures

**STEPS TO BE TAKEN IF MATERIAL IS RELEASED OR SPILLED:** Remove all sources of ignition, ventilate area and remove with inert absorbent and non-sparking tools.  Dispose of according to local, state (provincial) and federal regulations.  Do not incinerate closed containers.

## 7. Handling and Storage

**HANDLING:** Wash thoroughly after handling.  Wash hands before eating.  Remove contaminated clothing and launder before reuse. Use only with adequate ventilation.  Follow all SDS and label precautions even after container is emptied because it may retain product residues.  Avoid breathing fumes, vapors, or mist.  Avoid contact with eyes, skin and clothing.

**STORAGE:** Store in a dry, well ventilated place.  Keep container tightly closed when not in use.  Keep containers tightly closed. Isolate from heat, electrical equipment, sparks and open flame.  Avoid excess heat.

**Advice on Safe Handling of Combustible Dust:** No Information

## 8. Exposure Controls / Personal Protection

| Chemical Name | CAS-No. | Weight % Less Than | ACGIH TLV-TWA | ACGIH TLV-STEL | OSHA PEL-TWA | OSHA PEL-CEILING |
|---|---|---|---|---|---|---|
| Stoddard Solvent | 8052-41-3 | 30.0 | 100 ppm | N.E. | 500 ppm | N.E. |
| Tung Oil | 8001-20-5 | 20.0 | N.E. | N.E. | N.E. | N.E. |
| Xylenes (o-, m-, p- Isomers) | 1330-20-7 | 1.0 | 20 ppm | N.E. | 100 ppm | N.E. |
| Methyl Ethyl Ketoxime | 96-29-7 | 1.0 | 10 ppm | N.E. | N.E. | N.E. |
| Zirconium 2-Ethylhexanoate | 22464-99-9 | 1.0 | 5 mg/m3 | 10 mg/m3 | 5 mg/m3 | N.E. |
| Triethylamine | 121-44-8 | 1.0 | 0.5 ppm | 1 ppm | 25 ppm | N.E. |
| Ethylbenzene | 100-41-4 | 1.0 | 20 ppm | N.E. | 100 ppm | N.E. |
| Naphtha, Hydrotreated Heavy | 64742-48-9 | 1.0 | N.E. | N.E. | N.E. | N.E. |

**PERSONAL PROTECTION**

**ENGINEERING CONTROLS:** Use process enclosures, local exhaust ventilation, or other engineering controls to control airborne levels below recommended exposure limits.  Prevent build-up of vapors by opening all doors and windows to achieve cross-ventilation.

**RESPIRATORY PROTECTION:** A respiratory protection program that meets OSHA 1910.134 and ANSI Z88.2 requirements must be followed whenever workplace conditions warrant a respirator's use.

**SKIN PROTECTION:** Use gloves to prevent prolonged skin contact.  Nitrile or Neoprene gloves may afford adequate skin protection.

**EYE PROTECTION:** Use safety eyewear designed to protect against splash of liquids.

**OTHER PROTECTIVE EQUIPMENT:** Refer to safety supervisor or industrial hygienist for further guidance regarding types of personal protective equipment and their applications.

**HYGIENIC PRACTICES:** Wash thoroughly with soap and water before eating, drinking or smoking.  Remove contaminated clothing immediately and launder before reuse.

**Engineering Measures for Combustible Dust:** No Information

## 9. Physical and Chemical Properties

| | | | |
|---|---|---|---|
| Appearance: | Liquid | Physical State: | Liquid |
| Odor: | Solvent Like | Odor Threshold: | N.E. |
| Specific Gravity: | 0.910 | pH: | N.A. |
| Freeze Point, °C: | N.D. | Viscosity: | 130 SUS @ 100F |
| Solubility in Water: | None | Partition Coefficient, n-octanol/ water: | N.D. |
| Decomposition Temp., °C: | N.D. | | |
| Boiling Range, °C: | 100 - 316 | Explosive Limits, vol%: | 1.0 - 6.0 |
| Flammability: | Supports Combustion | Flash Point, °C: | 41 |
| Evaporation Rate: | Slower than Ether | Auto-Ignition Temp., °C: | N.D. |
| Vapor Density: | Heavier than Air | Vapor Pressure: | N.D. |

(See "Other information" Section for abbreviation legend)

## 10. Stability and Reactivity

**Conditions to Avoid:** No Information

**Incompatibility:** Incompatible with strong oxidizing agents, strong acids and strong alkalies.

**Hazardous Decomposition:** When heated to decomposition, it emits acrid smoke and irritating fumes.  Contains solvents which may form carbon monoxide, carbon dioxide, and formaldehyde.

**Hazardous Polymerization:** Will not occur under normal conditions.

**Stability:** This product is stable under normal storage conditions.

## 11. Toxicological Information

**EFFECTS OF OVEREXPOSURE - EYE CONTACT:** Substance causes moderate eye irritation.

**EFFECTS OF OVEREXPOSURE - SKIN CONTACT:** Substance may cause slight skin irritation.

**EFFECTS OF OVEREXPOSURE - INHALATION:** High gas, vapor, mist or dust concentrations may be harmful if inhaled.  Avoid breathing fumes, spray, vapors, or mist.  High vapor concentrations are irritating to the eyes, nose, throat and lungs.  Prolonged or excessive inhalation may cause respiratory tract irritation.

**EFFECTS OF OVEREXPOSURE - INGESTION:** Irritating to the nose, throat and respiratory tract.  Harmful if swallowed.

**EFFECTS OF OVEREXPOSURE - CHRONIC HAZARDS:** Reports have associated repeated and prolonged occupational overexposure to solvents with permanent brain and nervous system damage.  Overexposure to xylene in laboratory animals has been associated with liver abnormalities, kidney, lung, spleen, eye and blood damage as well as reproductive disorders.  Effects in humans, due to chronic overexposure, have included liver, cardiac abnormalities and nervous system damage.  IARC lists Ethylbenzene as a possible human carcinogen (group 2B).

**PRIMARY ROUTE(S) OF ENTRY:**  Eye Contact, Ingestion, Inhalation, Skin Absorption, Skin Contact

ACUTE TOXICITY VALUES
**The acute effects of this product have not been tested.  Data on individual components are tabulated below:**

| CAS-No. | Chemical Name | Oral LD50 | Dermal LD50 | Vapor LC50 |
|---|---|---|---|---|
| 8052-41-3 | Stoddard Solvent | N.E. | >3000 mg/kg Rabbit | 25 |
| 1330-20-7 | Xylenes (o-, m-, p- Isomers) | 3500 mg/kg Rat | >4350 mg/kg Rabbit | 29.08 mg/L Rat |
| 96-29-7 | Methyl Ethyl Ketoxime | 930 mg/kg Rat | 1100 mg/kg Rabbit | >4.83 mg/L Rat |
| 121-44-8 | Triethylamine | 460 mg/kg Rat | 415 mg/kg Rabbit | 14.5 mg/L Rat |
| 100-41-4 | Ethylbenzene | 3500 mg/kg Rat | 15400 mg/kg Rabbit | 17.4 mg/L Rat |
| 64742-48-9 | Naphtha, Hydrotreated Heavy | >6000 mg/kg Rat | >5000 mg/kg Rabbit | N.E. |

N.E. - Not Established

## 12. Ecological Information

**ECOLOGICAL INFORMATION:** Product is a mixture of listed components.

## 13. Disposal Information

**DISPOSAL:** Do not incinerate closed containers.  Dispose of material in accordance to local, state, and federal regulations and ordinances.

## 14. Transport Information

|  | Domestic (USDOT) | International (IMDG) | Air (IATA) | TDG (Canada) |
|---|---|---|---|---|
| UN Number: | N.A. | 1263 | 1263 | N.A. |
| Proper Shipping Name: | Not Regulated | Paint | Paint | Not Regulated |
| Hazard Class: | N.A. | 3 | 3 | N.A. |
| Packing Group: | N.A. | III | III | N.A. |
| Limited Quantity: | No | Yes | Yes | No |

## 15. Regulatory Information

### U.S. Federal Regulations:

#### CERCLA - SARA Hazard Category

This product has been reviewed according to the EPA 'Hazard Categories' promulgated under Sections 311 and 312 of the Superfund Amendment and Reauthorization Act of 1986 (SARA Title III) and is considered, under applicable definitions, to meet the following categories:

Flammable (gases, aerosols, liquids, or solids), Carcinogenicity, Reproductive toxicity, Respiratory or Skin Sensitization, Specific target organ toxicity (single or repeated exposure), Germ cell mutagenicity

#### SARA Section 313

This product contains the following substances subject to the reporting requirements of Section 313 of Title III of the Superfund Amendment and Reauthorization Act of 1986 and 40 CFR part 372:

| Chemical Name | CAS-No. |
|---|---|
| Xylenes (o-, m-, p- Isomers) | 1330-20-7 |
| Triethylamine | 121-44-8 |
| Ethylbenzene | 100-41-4 |

#### Toxic Substances Control Act

This product contains the following chemical substances subject to the reporting requirements of TSCA 12(b) if exported from the United States:

No TSCA 12(b) components exist in this product.

### U.S. State Regulations:

#### California Proposition 65

**WARNING:**                                    Cancer - www.P65Warnings.ca.gov.

## 16. Other Information

**HMIS RATINGS**

**Health:** 2*      **Flammability:** 2          **Physical Hazard:** 0          **Personal Protection:** X

**NFPA RATINGS**

**Health:** 2      **Flammability:** 2          **Instability:** 0

**Volatile Organic Compounds:**          272 g/L

**SDS REVISION DATE:**                        4/13/2023

**REASON FOR REVISION:**                  Substance Hazard Threshold % Changed
Substance and/or Product Properties Changed in
Section(s):
 02 - Hazard Identification
 03 - Composition / Information on Ingredients
 15 - Regulatory Information
Revision Statement(s) Changed

**Legend:**        N.A. - Not Applicable,  N.D. - Not Determined,  N.E. - Not Established

Rust-Oleum Corporation believes, to the best of its knowledge, information and belief, the information contained herein to be accurate and reliable as of the date of this safety data sheet.  However, because the conditions of handling, use, and storage of these materials are beyond our control, we assume no responsibility or liability for personal injury or property damage incurred by the use of these materials.  Rust-Oleum Corporation makes no warranty, expressed or implied, regarding the accuracy or reliability of the data or results obtained from their use.  All materials may present unknown hazards and should be used with caution.  The information and recommendations in this material safety data sheet are offered for the users' consideration and examination.  It is the responsibility of the user to determine the final suitability of this information and to comply with all applicable international, federal, state, and local laws and regulations.